## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 1:18-cr-315** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| **JORGE ROSA-HERNANDEZ,** | : | |
| **Defendant.** | : | **Electronically filed** |

## UNITED STATES' SENTENCING MEMORANDUM

The Government files this memorandum in response to Defendant Jorge Rosa-Hernandez's outstanding objections to the presentence report. The Court should overrule those objections; impose a two-level enhancement for obstruction of justice; and sentence Rosa-Hernandez to 120 months' imprisonment.

## PROCEDURAL AND FACTUAL BACKGROUND

On September 19, 2018, an indictment charged Rosa-Hernandez with possessing a firearm as a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Doc. 1. As recounted in the unobjected-to facts in the PSR, the charge is based on Rosa-Hernandez's shooting his four-year-old daughter while inside a McDonald's in York, Pennsylvania, on April 29, 2018. Doc. 29 ¶ 5. According to Rosa-Hernandez, after arriving at the McDonald's, he obtained his wife's .45

caliber pistol from their vehicle and put it in his pocket. *Id.* ¶ 6. While inside the restaurant, when he attempted to adjust his pants, the firearm discharged. *Id.*

Based on a total offense level of 32 and a criminal history category of IV, the probation officer calculated a guideline range of 168 to 210 months, which resulted in an ultimate guideline of 120 months—the maximum sentence for the offense. Doc. 29 ¶ 67. The offense level was based in part on Rosa-Hernandez's sale of two firearms (including one stolen firearm) on February 13, 2018. *Id.* ¶ 9. The probation officer concluded that the event constituted relevant conduct and resulted in enhancements for conduct involving (1) at least three firearms; (2) a stolen firearm; and (3) the trafficking of firearms. *Id.* ¶¶ 15-17. The offense level was also increased based on the probation officer's conclusion that Rosa-Hernandez possessed the firearm on April 29, 2018, in connection with another felony offense. *Id.* ¶ 18. And finally, the probation officer concluded that based on Rosa-Hernandez's post-arrest conduct, he had not withdrawn from criminal activity and was thus not entitled to a reduction for acceptance of responsibility. *Id.* ¶ 24.

2

Rosa-Hernandez objected to the facts related to the February 13 firearms sale.  Doc. 30.  He also objected to the enhancements listed above and the denial of a reduction for acceptance of responsibility. Doc. 30.  The Court held an evidentiary hearing to address some of Rosa-Hernandez's objections.

During the evidentiary hearing, the Government presented the testimony of a detective who observed portions of the February 13 sale as well as the testimony of an individual who was with Rosa-Hernandez during the sale.  That individual also testified that immediately prior to the evidentiary hearing, Rosa-Hernandez called him a "rat" and said "I'll see you soon."

## ARGUMENT

**I.    The February 13 possession of two additional firearms constitutes relevant conduct and the probation office correctly applied multiple enhancements based on that conduct.**

The testimony and exhibits presented during the evidentiary hearing established—at least by a preponderance of the evidence—that Rosa-Hernandez sold two firearms on February 13, 2018, as recounted in the PSR.  *See* Doc. 29 ¶ 9.  The evidence showed that Rosa-

Hernandez agreed to sell multiple firearms to an individual who—
unbeknownst to Rosa-Hernandez—was a confidential informant.
Shortly before the transaction, Rosa-Hernandez displayed the two
firearms to multiple people inside a residence on Jackson Street in
York.  Rosa-Hernandez, along with at least one other person, then
entered a white Toyota Highlander that was parked outside of the
residence and was registered to Rosa-Hernandez's wife.  While inside
the vehicle, Rosa-Hernandez gave the two firearms to another
individual who in turn took the firearms to the informant, who was
parked nearby.  The individual then returned to the Highlander with
$1,800 that the informant provided and gave the money to Rosa-
Hernandez.

> **A.    The February 13 possession of two additional
>        firearms constitutes relevant conduct and the
>        probation office therefore correctly concluded that
>        the offense involves three firearms.**

USSG § 2K2.1(b) includes a number of "specific offense
characteristics" that, if applicable, will increase a defendant's offense
level for firearms offenses.  Subsection (b)(1), for example, increases the
offense level if "the offense involved three or more firearms."

4

Offense levels—including "specific offense characteristics"—are determined based in part on the relevant conduct provisions in § 1B1.3. *See* USSG § 1B1.3(a).  The guidelines make clear, moreover, that "offense" "means the offense of conviction *and all relevant conduct under § 1B1.3* (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context."  USSG § 1B1.1, comment. (n.1(I)) (emphasis added).  Thus, "offense," as used in § 2K2.1(b)(1) (and elsewhere in § 2K2.1) includes not only the conduct underlying the offense of conviction, but all relevant conduct as well. *See United States v. West*, 643 F.3d 102, 107-08 (3d Cir. 2011) (applying relevant conduct principles to a guideline calculation under § 2K2.1).

The relevant conduct provision at issue here is § 1B1.3(a)(2), which provides that "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts," relevant conduct includes all acts and omissions committed by the defendant "that were part of the same course of conduct or common scheme or plan as the offense of conviction."  The commentary further explains that "[a]pplication of this provision does not require the defendant, in fact, to have been convicted of multiple counts."  USSG § 1B1.3, comment. (n.5).

5

The offense at issue here—unlawful possession of a firearm by a previously convicted felon—requires grouping under § 3D1.2(d). Subsection § 1B1.3(a)(2) therefore applies in this case.

The commentary to § 1B1.3 describes what constitutes the "same course of conduct or common scheme or plan." USSG § 1B1.3, comment. (n.5(B)). "Same course of conduct" is broader than "common scheme or plan," and covers offenses that "are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* § 1B1.3, comment. (n.5(B)(ii)). In determining whether offenses are sufficiently connected or related, courts should consider various factors, including "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.* Not all factors must weigh in favor of counting the offenses as relevant conduct, but when one "factor[] is absent, a stronger presence of at least one of the other factors is required." *Id.*

Each of the factors is present here.

First, the offenses at issue are identical. On February 13, 2018, Rosa-Hernandez unlawfully possessed firearms as a previously

6

convicted felon, and on April 29, 2018, he possessed a firearm as a previously convicted felon. *See United States v. Kulick*, 629 F.3d 165, 173 (3d Cir. 2010) (indicating agreement with "the proposition that one count of unlawful possession of a firearm is similar to a second count of unlawful possession of a firearm, and is therefore relevant conduct").

Second, not only did Rosa-Hernandez repeat the offense conduct, but there was no cessation of the unlawful conduct from February 13 to April 29.  As Detective Scott Nadzom testified, and as Government Exhibit 1 shows, the Smith & Wesson pistol involved in the April 29 offense was purchased by Rosa-Hernandez's wife on February 13—the same day Rosa-Hernandez sold the two additional firearms.  Although there is no evidence indicating that Rosa-Hernandez physically possessed the Smith & Wesson on February 13, the evidence (including Rosa-Hernandez's retrieval of the firearm on April 29) shows that from February 13 going forward, Rosa-Hernandez "had the ability to take actual possession of the [firearm] when [he] wanted to do so."  Third Cir. Model Instruction 6.18.922G-4.  His unlawful possession of at least one firearm was therefore continuous from at least February 13 through April 29.

7

Finally, and for these same reasons, there was no time interval between the offenses. The evidence shows that Rosa-Hernandez unlawfully possessed three weapons—two physically and one constructively—on February 13. And even if the law prohibited only physical possession (which it does not), and even if one assumes that Rosa-Hernandez never physically possessed the Smith & Wesson until shortly before he shot his daughter on April 29 (which is exceedingly unlikely), the interval between the February 13 event and the April 29 event is two and a half months at most. In *United States v. West*, the Third Circuit agreed with this Court's conclusion that "the five-month interval between [two gun possessions] met the requirement of temporal proximity."[1] 643 F.3d at 111. The court noted that "courts

---

[1] The Third Circuit in *West* ultimately disagreed with this Court's relevant conduct determination, but that holding is not applicable here. To begin, although the five-month interval in that case did not render the events too remote, it was "not strongly supportive of finding relevant conduct" and thus the court concluded that "the offenses must show significant similarity and regularity" 643 F.3d at 111. In this case, however, there was no time interval between the offenses, so the regularity and similarity factors can be relatively weaker than what was required in *West*. In any event, those factors are much stronger here than they were in *West*. Here, Rosa-Hernandez's unlawful possession of at least one firearm was continuous from February 13

have considered as relevant conduct offenses that preceded the offense

of conviction by as much as seventeen months." *Id.*; *see also, e.g.*,

*Kulick*, 629 F.3d at 172 (surveying circuit court cases and concluding

that they "establish[] that unlawful possession of a firearm in one year

may be relevant conduct to unlawful possession of a firearm in another

year"); *United States v. Santoro*, 159 F.3d 318, 321 (7th Cir. 1998)

(collecting cases and holding that "[t]he fact that Santoro possessed the

assault rifle and two other weapons within a six to nine month period is

sufficient . . . ."). Thus, the temporal-proximity factor—as well as the

other factors—weighs strongly in favor of including the possession of

the additional firearms on February 13 as relevant conduct. *See, e.g.*,

*Kulick*, 629 F.3d at 173 (discussing cases that stand "for the proposition

that a pattern of unlawfully possessing firearms over a relatively short

period of time met the 'same course of conduct requirement'").

---

through April 29. *West*, by contrast, involved two unconnected
incidents. And here, the offenses are exactly the same—felon in
possession of a firearm. In *West*, the offense of conviction was
possession of a stolen firearm, and although the additional event
involved a stolen firearm, there is no indication that West committed
the same offense since the offense requires knowledge that the firearm
was stolen.

Accordingly, Rosa-Hernandez's possession of two additional firearms on February 13 constitutes relevant conduct.  The probation officer therefore correctly applied a two-level enhancement under § 2K2.1(b)(1)(A) for an offense involving three firearms.

## B. The probation office correctly concluded that one of the firearms was stolen.

Under USSG § 2K2.1(b)(4)(A), a two-level increase applies if "any firearm . . . was stolen."  The probation officer applied that enhancement because one of the firearms that Rosa-Hernandez sold on February 13—the Jimenez Arms pistol—had been reported stolen in 2017.  Doc. 29 ¶¶ 9, 16.

The probation officer correctly applied the two-level enhancement. Detective Nadzom testified that the firearm had been reported stolen, and Government Exhibit 1 includes the police report relating to that offense and the report from the FBI's National Crime Information Center indicating the firearm had been reported stolen.  The Third Circuit has upheld the application of the enhancement based on similar evidence.  *See, e.g.*, *United States v. Harris*, 751 F.3d 123, 128 (3d Cir. 2014) (affirming application of the enhancement where "two reports

from the Department of Justice . . . indicted that the firearm was stolen" and the defendant "had not presented any evidence suggesting he had a lawful right to the firearm"); *United States v. Young*, 324 F. App'x 165, 168 (3d Cir. 2009) (affirming application of enhancement based on an ATF report and local police report indicating that the firearm had been reported stolen).  The Court should overrule Rosa-Hernandez's objection.

### C. The probation office correctly concluded that Rosa-Hernandez was engaged in the trafficking of firearms.

Under USSG § 2K2.1(b)(5), a four-level increase applies "[i]f the defendant engaged in the trafficking of firearms."  The commentary explains that the enhancement applies if the defendant:

(i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

(ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—

(I) whose possession or receipt of the firearm would be unlawful; or

(II) who intended to use or dispose of the firearm unlawfully.

11

USSG § 2K2.1, comment. (n.13(A)).[2]

The probation officer correctly applied the enhancement because Rosa-Hernandez transferred the firearms to an individual knowing that the individual intended to (and ultimately did) dispose of the firearms unlawfully by giving them to the informant.  The evidence showed that Rosa-Hernandez, while in his wife's Toyota Highlander, gave the firearms to Christopher Cruz-Ortiz, who then went to the informant's vehicle and gave the firearms to the informant.  The entire nature of each transaction—dealings in enclosed vehicles—is an obvious indication that Cruz-Ortiz's ultimate disposition of the firearms to the informant was unlawful.  And the evidence also showed that Rosa-Hernandez preferred that the transactions occur as they did because he was concerned that the informant would rob him.  Detective Nadzom testified, moreover, that the transfers of the handguns (first from Rosa-Hernandez to Cruz-Ortiz, and then from Cruz-Ortiz to the informant) were unlawful because they did not occur at a licensed firearms dealer.

---

[2] The commentary also defines "individual whose possession or receipt of the firearm would be unlawful."  USSG § 2K2.1, comment. (n.13(B)).

*See* 18 Pa. C.S. § 6111(c).  Additionally, Rosa-Hernandez also knew that the informant intended to dispose of the firearms unlawfully, because the informant had expressed his intention to make a profit by selling the firearms in New York.  The Court should overrule Rosa-Hernandez's objection.

## II.   Rosa-Hernandez possessed the firearm on April 29 in connection with another felony offense.

Under USSG § 2K2.1(b)(6)(B), a four-level increase applies if the defendant "used or possessed any firearm or ammunition in connection with another felony offense."  The commentary defines "another felony offense" as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."  USSG § 2K2.1, comment. (n.14(C)).

The probation officer correctly applied the four-level enhancement. Based on his conduct on April 29, 2018, Rosa-Hernandez was charged in York County with, among other things, recklessly endangering another

person, aggravated assault, and endangering the welfare of children.[3]
Doc. 29 ¶ 39.  The application of the four-level enhancement is
appropriate based on Rosa-Hernandez's commission of those offenses.
But the propriety of the enhancement is even more obvious based on
Rosa-Hernandez's possession of the firearm in connection with simple
assault.  Under 18 Pa. C.S. § 2701(a)(2), a person is guilty of simple
assault if he "negligently causes bodily injury to another with a deadly
weapon."  Rosa-Hernandez's conduct on April 29 fits squarely within
that offense.  The offense is a felony for guidelines purposes because it
carries a term of imprisonment of up to two years.[4]  *Id.* § 2701(b); *id.*
§ 106(b)(7).  The Third Circuit has affirmed the application of
§ 2K2.1(b)(6)(B) based on the defendant's possession of a firearm in
connection with Pennsylvania simple assault.  *See Harris*, 751 F.3d at
128; *United States v. Black*, 386 F. App'x 238, 240-41 (3d Cir. 2010).
The Court should overrule Rosa-Hernandez's objection.

---

[3] At the time of this filing, the charges remain pending.

[4] Because the victim was Rosa-Hernandez's four-year-old daughter, his
maximum penalty would actually be five years' imprisonment.  18 Pa.
C.S. § 2701(b)(2); *id.* § 106(b)(6).

III.   **The probation office correctly did not apply a reduction for acceptance of responsibility.**

Under USSG § 3E1.1, a defendant can obtain up to a three-level reduction for acceptance of responsibility.  The commentary makes clear, however, that a "defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." USSG § 3E1.1 (n.3).  The commentary also notes that in determining whether to apply the reduction, a court should consider whether the defendant has "withdraw[n] from criminal conduct or associations."  *Id.* § 3E1.1, comment. (n.1(B)).

The probation officer declined to apply the reduction because on the day Rosa-Hernandez pleaded guilty, he submitted a urine sample that tested positive for cocaine.  Doc. 29 ¶ 24.  Despite that event, Rosa-Hernandez again tested positive for cocaine on March 7, 2019, and admitted to using cocaine.  *Id.*  After the submission of the PSR, moreover, Rosa-Hernandez was arrested at approximately 3:00 a.m. for suspicion of driving under the influence and driving while his operating privileges were suspended or revoked.  Those charges are currently

pending in York County.  *See Comm. v. Rosa-Hernandez*, No. CP-67-CR-5626-2019.

The probation officer correctly did not reduce Rosa-Hernandez's offense level for acceptance of responsibility.  The Third Circuit has previously affirmed the denial of a reduction based on the defendant's conduct—including drug use—while on pre-trial release.  *See, e.g.*, *United States v. Ceccarani*, 98 F.3d 126, 131 (3d Cir. 1996).  The court has explained that "the defendant's post-offense conduct can shed significant light on the genuineness of a defendant's claimed remorse." *Id.* at 129; *see also id.* at 130 ("Continual criminal activity, even differing in nature from the convicted offense, is inconsistent with an acceptance of responsibility and an interest in rehabilitation.").  The Court should overrule Rosa-Hernandez's objection.

## IV. The Court should apply a two-level enhancement for obstruction of justice.

Under USSG § 3C1.1, a two-level enhancement applies if:

(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

The commentary notes that the enhancement is meant to cover a defendant's "threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . directly or indirectly, or attempting to do so." USSG § 3C1.1, comment. (n.4(A)).

Following the submission of the PSR and on the morning of the evidentiary hearing in this case, Rosa-Hernandez called a witness a "rat" and said "I'll see you soon." This was obviously a threat and an attempt by Rosa-Hernandez to intimidate the witness into not testifying or providing a false account of what occurred on February 13, 2018. The two-level enhancement under § 3C1.1 therefore applies. The Third Circuit has affirmed the application of the enhancement based on statements similar to Rosa-Hernandez's statement to the witness. *See, e.g.*, *United States v. Little*, 472 F. App'x 129, 132 (3d Cir. 2012); *United States v. Carter*, 293 F. App'x 954, 957 (3d Cir. 2008).

## V. The Court should sentence Rosa-Hernandez to 120 months' imprisonment.

Based on a total offense level of 32 and a criminal history category of IV, the probation officer calculated Rosa-Hernandez's guideline range as 168 to 210 months. Doc. 29 ¶ 67. With a two-level enhancement for

obstruction of justice, his guideline range will be 210 to 262 months.
Based on either guideline range, a sentence at the 120-month statutory
maximum is appropriate.

If the court sustains some of Rosa-Hernandez's objections, the
Court should nonetheless sentence Rosa-Hernandez to 120 months, or
at a minimum, the Court should sentence Rosa-Hernandez at the upper
end of the ultimate guideline range.  The following facts weigh in favor
of that disposition:

- As a result of Rosa-Hernandez's reckless conduct, his four-
  year-old daughter suffered a significant injury.  Doc. 29 ¶ 5.

- Even if the Court determines that Rosa-Hernandez's
  possession of two firearms on February 13, 2018, does not
  constitute relevant conduct, the evidence presented during
  the evidentiary hearing clearly showed that Rosa-Hernandez
  was engaged in the illegal sale of firearms.  The Court
  should consider that evidence when evaluating Rosa-
  Hernandez's "history and characteristics" and the need "to
  protect the public from further crimes."  18 U.S.C.
  § 3553(a)(1), (a)(2)(C); *see also* USSG § 1B1.4 ("In

18

determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law.").

- Rosa-Hernandez violated the conditions of his pretrial release multiple times.  Doc. 29 ¶ 24; Doc. 41.

- Rosa-Hernandez's criminal history dates back to the age of 15 and includes a prior drug-trafficking offense.  Doc. 29 ¶¶ 27, 30.

- Rosa-Hernandez committed the instant offense (and made the illegal sale of firearms on February 13, 2018), while on probation.  Doc. 29 ¶ 34.

## CONCLUSION

The Court should overrule Rosa-Hernandez's objections; impose a two-level enhancement for obstruction of justice; and sentence Rosa-Hernandez to 120 months' imprisonment.

Dated:  September 17, 2019          Respectfully submitted,

DAVID J. FREED
United States Attorney

/s/ Carlo D. Marchioli
Carlo D. Marchioli
Assistant U.S. Attorney
PA 309217
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, PA  17108
Tel:  (717) 221-4482
Fax:  (717) 221-4493
carlo.d.marchioli@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on September 17, 2019, I served the foregoing

document by electronic service on the following individual:

John F. Yaninek, Esq.
jyaninek@tthlaw.com

/s/ Carlo D. Marchioli
Carlo D. Marchioli
Assistant U.S. Attorney