# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 1:18-CR-315 |
| v. | |
| JORGE LUIS ROSA-HERNANDEZ<br>Defendant | (JUDGE JONES) |

## ROSA-HERNANDEZ'S SENTENCING MEMORANDUM

AND NOW, this 9th day of October, 2019, comes Defendant, Jorge Luis Rosa-Hernandez, by and through his counsel, John F. Yaninek, Esquire and files this Sentencing Memorandum regarding his outstanding objections to the Presentence report and the Government's failure to ever file any objections requesting the imposition of enhancement for obstruction of justice.

## FACTUAL BACKGROUND

On September 19, 2018, an indictment charged Rosa-Hernandez with possession of a firearm by a previously convicted felon, in violation of 18U.S.C.§922(g)(1) and 924(a)(2)(Count 1). Rosa-Hernandez pled guilty to the indictment on December 27, 2018.

This plea arose out of an accidental shooting that occurred on April 29, 2018. Rosa-Hernandez accidentally shot his 4-year old daughter while inside McDonald's in York. The firearm went off in Defendant's pocket with the bullet passing through Defendant's pant legs and ricochetting off the floor of McDonald's and striking his daughter in the leg. Surveillance video captured the incident. The plea had nothing to do with uncharged misconduct from 2018. This uncharged misconduct became the foundation for a number of sentence enhancements. Defendant has objected to these enhancements.

On February 12, 2018, a confidential informant (CI) informed law enforcement that he could purchase two firearms from Christopher Cruz-Ortiz. On February 13, 2018, Cruz-Ortiz called the CI and stated that he was at a residence in York with an individual who had two firearms for sale. Testimony of this CI on August 28, 2019 allegedly implicates Rosa-Hernandez in this firearms transaction. Additionally, the Government solicited testimony from the CI indicating that he was called a "rat" inside the courts holding cell by Defendant.

During the August 28, 2019 hearing, Detective Nadzom testified that the two firearms related to the February 12th and 13th purchase were similar

in character and caliber to the pistol used on April 29, 2018 in the McDonald's shooting. According to Detective Nadzom, the pistol involved in the McDonald's shooting was purchased by Blanca Patricia Rodriguez-Torres. The two firearms involved in February had nothing to do with her.

The Governments other witness that testified on August 28, 2019 testified that the firearms purchased on February 13, 2018 were never seen again and not involved in the McDonald's shooting. The witness specifically stated that the firearms purchased in February had nothing to do with the McDonald's shooting. The February 2018 facts and circumstances are clearly unrelated to anything charged or pled guilty to in this case.

## ARGUMENT

I.  **The February 13 incident does not constitute relevant conduct with regard to the April 29 incident for purposes of the United States Sentencing Commission Guidelines § 1B1.3(a)(1).**

With regard to the applicability of § 1B1.3(a)(1) or (a)(2), the Third Circuit held that "if both sections could apply to the facts of a case, we must apply Section (a)(2). *U.S. v. Kulick*, 629 F.3d 165, 170 (3d Cir. 2010) (citing *Jansen v. United States*, 369 F.3d 237, 248 (3d Cir. 2004)). Further, the

Third Circuit stated that "Section (a)(2) applies when the offense of conviction is a groupable offense, regardless of the nature of the alleged relevant conduct," Id. (internal quotation omitted)  Therefore, for a finding of relevant conduct under § 1B1.3(a),  three conditions be met: "(1) it must be the type of conduct described in § 1B1.3(a)(1)(A) and (B) . . . ; (2) grouping would be appropriate under § 3D1.2(d); and (3) it must have been part of the same course of conduct or common scheme or plan under § 1B1.3(a)(2)." *U.S. v. Blackmon*, 557 F.3d 113, 123 (3d Cir. 2009) (internal quotations and citations omitted).

The first condition is met if any "acts and omissions aided, abetted, counseled, commanded, induced procured, or willfully caused by the defendant . . . occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." § 1B1.3(a)(1)(A). Here, there is absolutely no connection between the offense of conviction, *i.e.* Felon in Possession of a Firearm on April 29, 2018, with the alleged sale of two firearms by Defendant on February 12, 2018. First, the alleged transaction on February 12, 2018, did not occur during the accident in McDonalds because the two incidents are completely isolated and distinct. The two

events occurred nearly two and a half months apart. Further, even assuming Defendant was involved in the February 12 event, the offenses occurred for different purposes. The February 12th incident was transactional in nature and involved an exchange of two guns for $1,200, while the April 29th incident was carried out with the purpose of protecting Defendant's family from what Defendant perceived as potential danger. Second, there is no evidence suggesting that the firearm transaction on February 12, 2018, was in preparation for Defendant possessing his wife's firearm in McDonald's on April 29, 2018. Finally, the February 12th event was not in the course of avoiding detection or responsibility because it occurred before the April 29th offense for which Defendant has been convicted. Therefore, this condition cannot be met and the alleged transaction on February 12 should not be considered relevant conduct.

Assuming, *arguendo*, that § 1B1.3(a)(1)(A) is satisfied, Defendant's conviction is groupable. Included under the grouping guidelines of § 3D1.2(d) is § 2K2.1. Section 2K2.1(a)(4)(A) applies if, "If [] the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance

offense." In this case Defendant sustained a felony conviction of a controlled substance offense because he was convicted of Possession with Intent to Deliver a Controlled Substance on November 22, 2008 and Defendant's conviction fits within § 2K2.1. Therefore, grouping would be appropriate under § 3D1.2(d) and this element is met.

Under the third condition, relevant conduct includes conduct "that is [1] part of the same course of conduct or [2] common scheme or plan as the offense of conviction." §1B1.3(a)(2). The Guidelines define common scheme or plan as "substantially connected to each other by at least one factor, such as common victims, common accomplices, common purpose, or similar modus operandi." Id. App. Note 5(B)(i). The Third Circuit acknowledged that "a crime merely suggested by or arising out of the commission of a previous crime is not related to the earlier crime in the special sense of being part of a common plan or scheme." *U.S. v. West,* 643 F.3d 102, 111 (3d Cir. 2011) (internal quotations omitted). Further, "In determining whether there was a common scheme or plan, intent of the defendant is a crucial part of the analysis." Id. (quoting *U.S. v. Hallman*, 23 F.3d 821, 826 (3d Cir. 1994)).

With regard to a common scheme or plan, there is nothing in the record connecting the February 12th incident to the April 29th incident except for the fact that they both involved firearms. Defendant's daughter, the victim of the April 29th shooting, was not injured on February 12 and had absolutely no involvement in the February 12th transaction. Defendant had no accomplishes in the April 29th shooting; it was solely the defendant that carried the firearm into McDonald's and accidently discharged it. Defendant's purpose in carrying the firearm into the McDonald's on April 29th was to protect his family. There is not a shred of evidence suggesting Defendant intended to sell his wife's firearm before, during, or after entering McDonald's. Finally, the April 29th shooting does not appear to have a modus operandi. Defendant merely responded to what he perceived as a threat to his family. Indeed, his decision on April 29th was impulsive and poorly thought out; further supporting the notion that the February 12th incident and April 29th incident where not part of a common scheme our plan.

The guidelines define same course of conduct as "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Id. App.

Note 5(B)(ii). The Third Circuit held that the same course of conduct "envelops a greater sphere of activity than [common plan or scheme]." *West*, 643 F.3d at 111. In considering whether a defendant's actions are within the same course of conduct, one must consider "[1] the degree of similarity of the offenses, [2] the regularity (repetitions) of the offenses, and [3] the time interval between the offenses." § 1B1.3(a)(2) App. Note 5(B)(ii). In weighing these factors, the Guidelines state, "[w]hen one of the above factors is absent, a stronger presence of at least one of the other factors is required." Id.

With regard to the same course of conduct, there is nothing in the record to suggest that the accidental shooting on April 29th was "part of a single episode, spree, or ongoing series of offenses" with Defendant's alleged sale of firearms on February 12th.

The similarity factor weighs against a finding of the same course of conduct. First, the firearms involved in the February 12th incident are not the same firearms involved in the April 29th conviction. The firearms from the transaction on February 12th were sold to a confidential informant and subsequently confiscated by police, whereas the firearm used in the McDonalds on April 29th was owned by Defendant's wife. Second, the

offenses are vastly different. The February 12th incident involved an illegal firearms transaction. Furthermore, the firearms involved in the February 12th event were not discharged and there were no injuries. Conversely, the April 29th incident involved the accidental discharge of a firearm concealed by Defendant whereby Defendant's child was injured. Defendant did not enter McDonalds with the purposes of selling the firearm he possessed but carried it for the sole purpose of protecting his family. Further, while the firearms in the February 12 incident appear to be stolen, the firearm in the April 29th incident was legally owned by defendant's wife. The only similarity between the two incidents was that they both involve firearms. Therefore, the similarity factor cannot be met.

Likewise, the regularity factor weighs against a finding of the same course of conduct. First, assuming that Defendant was involved in the February 12th transaction, there is no evidence that Defendant was involved in more than that single transaction. His criminal record does acknowledge prior criminal behavior; however, nothing in his criminal history indicates that Defendant was involved with selling firearms. In fact, Defendant does not have any prior criminal history involving firearm

convictions.1 The only incidents involving Defendant and any firearms occurred on February 12 and April 29, 2018. As explained above, however, those two incidents were significantly different. Thus, the evidence establishes that the February 12th and April 29th incidents were isolated, distinct, and do not establish a pattern of regularity with regard to firearm offenses involving Defendant.

Finally, the proximity factor does weigh in favor the same course of conduct. The Third Circuit held that the proximity factor was met when an offense preceded the offense of conviction by seventeen months. *U.S. v. Wilson*, 106 F.3d 1140, 1144 (3d Cir. 1997) (citing *U.S. v. Richards*, 27 F.3d 465, 468-69 (10th Cir. 1994)). Here, the proximity factor is met because the alleged firearm transaction occurred two and a half months before the McDonalds incident. Thus, this factor weighs in favor of the same course of conduct.

Despite the proximity factor, it is well established that no one factor is dispositive. See West, 643 F.3d at 111. "Where one factor is weak or absent, a stronger showing of at least one of the other factors is required." Id. Here, both the similarity and the regularity factors are non-existent,

---

[1] Defendant was convicted of making threats to shoot and kill a Joese Victor Velez-Plaza while in Puerto Rico in 2006. However, there is no indication that Defendant possessed or had access to a firearm.

requiring the proximity factor to be extremely strong. Although the proximity factor was met, the incidents were, nevertheless, separated by two and a half months. Such a separation is too weak to overcome the lack of similarity and regularity. Thus, the alleged February 12th transaction is not the same course of conduct as the April 29th conviction.

Upon the foregoing analysis, the alleged February 13th incident does not constitute relevant conduct under § 1B1.3(a) and should not be considered in determining Defendant's sentence.

## II. Rosa-Hernandez's possession of the firearm on April 29, 2018 is not in connection with another felony offense.

Based upon the statute and relevant case law, it does not appear that the defendant had the requisite *mens rea*—either intent, knowledge, or recklessness—required to support a conviction of Aggravated Assault under 18 Pa. C.S. § 2702(a)(8).

Under 18 Pa. Con. Stat. § 2702(a) (2013), "A person is guilty of aggravated assault if he [] attempts to cause or intentionally, knowingly or recklessly causes bodily injury to a child less than six years of age, by a person 18 years of age or older[.]" From the record it is clear that the Defendant caused bodily injury to a child less than six year of age because

Defendant's daughter suffered a gunshot wound from the gun carried by Defendant. Further, it is evident that Defendant did not act intentionally or knowingly because the firearm in Defendants pocket discharged accidently when, while attempting to pull up his pants, Defendant's keys came in contact with the trigger and caused the gun to fire. Therefore, the only question is whether Defendant's actions fall within the meaning of reckless under § 2702(a)?

In order to establish recklessness, "the Commonwealth must show an assailant's recklessness rose to the level of malice, a crucial element to sustain a conviction for aggravated assault." *Commonwealth v. Bruce*, 916 A.2d 657, 664 (Pa. Super. 2007). Malice that is required to establish recklessness in an aggravated assault case is the same malice necessary to establish third degree murder. *Commonwealth v. Miller*, 955 A.2d 419, 422 (Pa. Super. 2008). Malice is defined as "a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty[.]" Id. According to the Pennsylvania Supreme Court, "mere recklessness is insufficient to support a conviction for aggravated assault[.]" *Commonwealth v. O'Hanlon*, 653 A.2d 616, 618 (Pa. 1995). The degree of recklessness required for aggravated assault includes

"an element of deliberation or conscious disregard of danger." Id. Said another way, for recklessness to rise to the level of malice:

> [I]t must be shown that the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury . . . . A defendant must display a conscious disregard for almost certain death or inury sucht that it is tantamount to an actual desire to injure or kill[.]

Bruce, 916 A.2d at 664.

The Superior Court addressed the relationship between recklessness and the accidental discharge of a firearm in *Commonwealth v. Elliott*, No. 2064 EDA 2013, 2014 WL 10753247, *1 (Pa. Super. Dec. 15, 2014).[2] In *Elliott*, four individuals where sitting in the front seat of the car, doors open, smoking marijuana. Id. At some point, the defendant pulled out a gun and stated he had a license to carry. Id. While removing the clip, the gun discharged, killing one of the occupants in the car. Id. The defendant was convicted of third-degree murder and subsequently appealed. Id. On a Post Sentence Motion and Appeal, the defendant asserted that the evidence was insufficient to find that he acted with malice because the shooting was an accident and he did not act with ill will. Id. at 3. In its opinion, the Court of Common Pleas rejected the defendant's assertion and held that malice may

---

[2] Please note that this is an unpublished Superior Court decision. Further, the court agreed with the Court of Common Pleas' opinion and incorporated the Court of Common Pleas' opinion into its own opinion.

exist even where the shooting was accidental and the defendant did not exhibit ill will. Id. at 5. The fact that the defendant had the gun in his possession, pulled the gun out in a confined space, and pointed the gun at the victim was enough to establish malice. Id. at 4.

The facts in our case are distinguishable from the facts in *Elliot*. First, in *Elliot*, the defendant pulled out the gun and pointed it at the victim. In our case, Defendant, at no point prior to the firearm discharging, even revealed that he was carrying a firearm. Further, the gun was not aimed directly at Defendant's daughter; the bullet ricocheted off the floor and subsequently struck the girl.  In *Elliot*, it was the fact that the defendant pointed the loaded gun at the victim that established malice, not that the defendant had a loaded gun that accidently fired. See *Commonwealth v. Young*, 431 A.2d 230, 232 (Pa 1981) (upholding a finding of malice where defendant intentionally pointed a loaded gun at the victim and the gun accidentally discharged). There is no question that Defendant showed poor judgment by carrying his wife's loaded firearm into a McDonalds, especially because he was prohibited from possessing a firearm. However, merely possessing a firearm does not have an unjustified and extremely high risk of causing serious injury or death. Presumably, hundreds of

thousands of Pennsylvania residents carry firearms. See Paul Bedard, Concealed Gun Permits Hit Record 16 Milliosn, 50% Rate in Pa. County, Washington Examiner (July 21, 2017), https://www.washingtonexaminer.com/concealed-gun-permits-hit-record-16-million-50-rate-in-pa-county.  Defendant's actions simply do not rise to the level of recklessness required under § 2702 to justify a conviction of aggravated assault. Therefore, in calculating defendant's sentence, the aggravated assault charge should not be considered.

### III.     The United States did not object to the probation officer's Presentence Report which does not include an enhancement for obstruction of justice.

The prosecution argues for the application of a two-level enhancement for obstruction of justice that is not included in the presentence report.

The Government argues that on the morning of the evidentiary hearing, Rosa-Hernandez called a witness a "rat" and said "I'll see you soon."  The prosecution did not indicate at any time during the hearing that he intended to advocate to this Court for an enhancement that was not within the presentence report.  Based on the report and the objections pending, defense counsel did not cross-examine the witness regarding the

alleged name calling in the court holding cell.  The United States cannot now ask for an enhancement based on the surprise addition to their Sentencing Brief.  The Government should be required to file an Objection to the Presentence Report, have that Objection evaluated by the probation officer as is the customary practice of this jurisdiction.  At that point, Defense would have the option to recall the witness on the issue of the name calling in the holding cell and whether said witness was intimidated or felt it was an intimidation tactic.

## CONCLUSION

The court should sustain Rosa-Hernandez's objections and reject the Government's last minute request for a two level enhancement for obstruction of justice.

Respectfully submitted,

THOMAS, THOMAS & HAFER, LLP

*/s/ John F. Yaninek*

_____

John F. Yaninek, Esquire
Attorney I.D. No. 55741
P.O. Box 999
Harrisburg, PA 17108-0999
Phone: 717-441-3952

16

E-mail: jyaninek@tthlaw.com

Date:  October 9, 2019